UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| | § | |
| THE EXTRADITION OF | § | MISC. H-13-287 |
| | § | |
| ARMANDO PADILLA ADAME | § | |
| | § | |
| | § | |
| | § | |

**ORDER DENYING MOTION FOR RELEASE**

Pending before the Court are the Motion to Deny Bail, filed by the United States (Dkt. # 3), and the Motion for Release from Provisional Detention, filed by Armando Padilla Adame ("Padilla") (Dkt. #8). After due consideration of the Parties' arguments and the applicable law, the Court concludes that the United States' motion should be **GRANTED** and Padilla's motion for release should be **DENIED**.

**I.    BACKGROUND**

Padilla, who was born in Mexico, is a legal resident of the United States who lives in Dallas, Texas. On February 11, 2013, the United States filed a Complaint seeking his arrest for purposes of extradition. (Dkt. # 1). In that Complaint, the United States alleges that Mexico requested the provisional arrest of Padilla on the grounds that he was charged in the State of Durango with Simple Intentional Homicide and that a Mexican court accordingly issued a warrant for his arrest. (Id.). According to the request submitted by the Mexican government, Padilla is alleged by two eye-witnesses to have assaulted one man and fatally shot another during a violent and unprovoked argument at a

pool hall in the town of San Lucas de Ocampo on January 1, 2012. A hearing on these motions was held before this Court on March 7, 2013. Padilla's extradition hearing is currently set for April 19, 2013.

## II. APPLICABLE LAW

The United States and Mexico are parties to a mutual extradition treaty (the "Treaty"). Extradition Treaty, U.S.-Mex., art. 1, May 4, 1978, 31 U.S.T. 5059. The Treaty provides that the United States and Mexico mutually agree, upon a valid request, to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. The request must contain a description of the person sought, a description of his or her alleged crimes, a declaration of the existence of a warrant for his or her arrest, and an undertaking to submit a formal request for extradition. *Id*. art. 11; *see also In re Extradition of Garcia,* 825 F. Supp.2d 810, 815 (S.D. Tex. 2011) (Magistrate J. Hacker) (describing in detail the four-step extradition process under the Treaty).

The federal statute governing extraditions is 18 U.S.C. § 3181 *et. seq.* Section 3184 of the statute provides for the issuance of an arrest warrant for extradition in cases where an extradition treaty is in place and calls for a hearing after arrest "to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. However, neither this federal extradition statute nor the Bail Reform Act provides guidance as to how a court should handle a bail request in an international extradition case once the person is arrested and detained by the United States. *In re Extradition of Garcia*, 761 F. Supp.2d 468, 470 (S.D. Tex. 2010). Similarly, the Treaty itself is silent with respect to

bail. The Supreme Court of the United States has stated that "while bail should not ordinarily be granted in cases of foreign extradition," it was unwilling to hold as a general rule that the courts, "may not in any case, and whatever the special circumstances, extend the relief." 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948 (1903). Accordingly, federal courts have crafted common-law doctrines to govern in such cases, and this body of case law guides the determination as to whether Padilla's Motion for Release should be granted. *See, e.g., In re Extradition of Russell,* 805 F.2d 1215, 1216 (5th Cir. 1986) ("Bail should be denied in extradition proceedings absent 'special circumstances.'") (citing *Wright*, 190 U.S. at 62–63, 23 S.Ct. 781).

This "special circumstances test" creates a presumption against bail in an international extradition case. *Id.* "The government's strong interest in denying bail stems from its need to ensure that the United States fulfills its international treaty obligations." *Garcia*, 761 F. Supp.2d at 470 (citing *Wright*, 190 U.S. at 62, 23 S.Ct. 781). "This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable." *Id.*; *In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 735 (W.D. La. 1999) ("Bail is not ordinarily available in extradition cases due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country.").

Further, this "special circumstances" determination is a discretionary decision for the trial judge, and "the list of potential special circumstances is not limited to those previously recognized in published decisions." *Gonzalez*, 52 F.Supp.2d at 736; *Garcia*,

3

761 F.Supp.2d 468 ("Put simply, the determination of whether a potential international extradite has satisfied their burden to warrant bail is necessarily made on a case-by-case basis."). The Fifth Circuit has observed that that "[b]eing a tolerable bail risk is not in and of itself a 'special circumstance.'" *Russell*, 805 F.2d at 1217.

### III.   ANALYSIS

In his Motion for Release, Padilla argues that he is not a flight risk, nor is he a danger to the community, and he should therefore be released pending his extradition hearing. In addition, Padilla alleges that "special circumstances" exist and that these circumstances further warrant his conditional release. Specifically, Padilla questions the validity of the charges against him in Mexico, pointing to the procedural history of those charges and arguing there is evidence that the Mexican government does not intend to prosecute him on those charges. Further, Padilla argues Mexico itself has indicated its willingness to allow him to remain at his home in Dallas pending his criminal trial in that country. After reviewing all of the evidence, the Court finds that Padilla has not demonstrated that he is not a flight risk and not a danger to the community and that he has not shown that there are special circumstances warranting his release on bond.

First, the evidence at the hearing reveals that Padilla's character and veracity, the very factors his Motion for Release originally pointed to as justifying his release, may be called into question. The Court heard evidence that Mr. Padilla is a legal resident of the United States, and that his wife is also a United States Citizen. According to the evidence, Padilla and his wife have three teenage children—all of whom are United States citizens, who live in the Dallas area with their parents and attend school. Padilla

4

also owns a restaurant supply business in Dallas. That business, however, apparently involves travelling to Houston and a large part of Padilla's time is spent away from his home and family in Dallas. In fact, Padilla was arrested while he was in Houston. Padilla's Motion alleged that, at the time of his arrest in Houston, he was on a business trip. Evidence admitted at the hearing, however, revealed that was not entirely the case. Instead, the evidence showed that Padilla has been engaged in a romantic relationship with a woman in Houston for some length of time, and that he has a young child with her. From the circumstances under which this fact was admitted into evidence at the hearing—where counsel requested that Padilla's family members be cleared from the courtroom prior to its admission—the Court concludes that Padilla has concealed this fact from his friends and family.

Additionally, Padilla is alleged to be fluent in Spanish and he has family and economic ties to Mexico. Padilla admits that, at the time of the alleged events, he was in Mexico with his son and that he had travelled there to transact business on behalf of his elderly mother, who still resides in that country. Padilla admits that he owns property in Mexico. He contends, however, that he "fears reprisals from people [in Mexico] that know the addresses of all his properties." (Motion for Release, pg. 6).

Viewing all of the evidence, the Court believes that Padilla poses a risk of flight in this case that is beyond "tolerable." He has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico. Despite Padilla's characterization of the charges pending against him as being in question, the evidence

presented to the Court shows that, at this time, the Mexican Government still intends to prosecute him for the crime of homicide. If convicted of that crime, Padilla could be subject to a significant period of incarceration. Further, although Padilla's Motion repeatedly points to his wife and children in Dallas as guaranteeing his compliance with court conditions and appearing as ordered, the Court heard evidence that Padilla has engaged in a pattern of behavior by which he has concealed significant parts of his life from them. The Court finds this pattern of concealment and subterfuge also calls into question Padilla's candor with the Court and the United States Government. Further, the Court concludes that none of the family or other ties presented during the hearing are sufficient to outweigh the risk of Padilla's risk of flight, nor are these family members or other persons sufficient custodians or sureties to prevent Padilla's flight or compliance with any conditions of release. Finally, the violent nature of the charges pending against Padilla in Mexico—an essentially unprovoked assault of one man and the fatal shooting of another—indicate that he poses a danger to the community.

Moreover, the Court finds that there are no "special circumstances" that merit Padilla's release. Padilla's Motion and argument to the Court repeatedly contended that the Mexican authorities have invalidated or vacated the warrant upon which Mexico based the original extradition request, but not confirming evidence of that fact was presented. The Court declines to engage in an analysis of criminal and appellate procedure of the laws of Mexico. Instead, the evidence is that the Government of Mexico, pursuant to the Treaty, has requested the extradition of Padilla so that he may face the charge of homicide.

## CONCLUSION

Padilla's Motion for Release from Provisional Detention is **DENIED**, and the Motion to Deny Bail filed by the United States is **GRANTED**. **IT IS SO ORDERED.**

SIGNED at Houston, Texas, this 25th day of March, 2013.

George C. Hanks Jr.
United States Magistrate Judge